UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUDGE LEINENWEBER

MAGISTRATE JUDGE GILBERT

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| CAROL SIMMONS | ) |
| ELLIE STEWART | ) |
| GREGORY WALKER | ) |
| TAYNA MCCHRISTION | ) |
| KAEVA POWELL | ) |
| BRIAN WADE | ) |
| DANIEL HABEEL | ) |

11 CR 0004

Violation: Title 18, United States
Code, Section 1343

FILED

JAN X 4 2011
JAn 4 2011
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**COUNT ONE**

The SPECIAL AUGUST 2009-1 GRAND JURY charges:

1.     At all times material to this indictment:

   a.     Defendant CAROL SIMMONS ("SIMMONS") was a loan officer and loan processor at Company A, a mortgage brokerage company with offices located in LaGrange, Illinois and Homewood, Illinois;

   b.     Defendant KAEVA POWELL was the sole owner and employee of Aveak Incorporated ("Aveak"), which purported to be a real estate service company;

   c.     Defendant DANIEL HABEEL ("HABEEL") was a unlicensed real estate agent in Illinois;

   d.     Long Beach Mortgage Company ("Long Beach Mortgage"), Countrywide Home Loans ("Countrywide"), Fieldstone Mortgage Company and Investments ("Fieldstone Mortgage"), America's Wholesale Lender, and Universal Mortgage Corporation (collectively "lenders") made mortgage loans;

   e.     Lenders required applications for mortgage loans to provide truthful

information, including information regarding a borrower's name, date of birth, employment, income, assets, financial condition, real estate owned, rental income received, payment of earnest money, sales price of the property, and intention to occupy the property purchased, which information was material to the approval, terms, and funding of the loan;

        f.      Lenders sold the mortgage loans to other lenders and institutions (successors). Lenders disclosed that the mortgage loans could be sold and the likelihood that the mortgage loans would be sold. The information provided in loan applications and supporting documents, including the borrower's employment, financial condition, assets, liabilities, payment history, rental income, contribution to the purchase price, intention to occupy the property purchased, and the sales price, value and condition of the property, was material to the successors' decisions to purchase the mortgage loans.

        2.      Beginning no later than January 2005, and continuing until at least July 2007, at Chicago, Park Forest, and South Holland, in the Northern District of Illinois, Eastern Division, and elsewhere,

CAROL SIMMONS
ELLIE STEWART
GREGORY WALKER
TAYNA MCCHRISTION
KAEVA POWELL
BRIAN WADE
DANIEL HABEEL

defendants herein, together with others known and unknown to the Grand Jury, devised, intended to devise, and participated in a scheme to defraud lenders and successors and to obtain money and property from lenders, by means of materially false and fraudulent pretenses, representations and promises and material omissions, which scheme is further described below.

2

3.     It was part of the scheme that defendants SIMMONS, STEWART, WALKER, MCCHRISTION, POWELL, WADE, and HABEEL, together with persons known and unknown to the grand jury, fraudulently obtained at least $3,000,000 in mortgage loans from lenders, and defrauded successors, by making materially false representations and omissions in loan applications and supporting documentation concerning various nominee borrowers' employment, income, financial condition, rental income, and contribution towards the purchase price or earnest money payment, and the purchase price, and for the purpose of executing the scheme caused interstate wire transmissions.

4.     It was further part of the scheme that defendants SIMMONS, STEWART, WALKER, MCCHRISTION, POWELL, WADE, and HABEEL, and others, created or caused to be created false and fraudulent documents to support the materially false representations provided in the mortgage loan applications, including false leases, false W-2 tax forms, false pay stubs, false invoices, false sales contracts, false bank statements, and false identification documents, well knowing that the statements in these documents were false and were material to the lenders' decisions to approve the loans and successors' decisions to purchase the mortgage loans.

5.     It was further part of the scheme that defendant SIMMONS acted as the loan officer for a number of transactions and prepared various nominees' loan application packages, well knowing that the loan application packages contained materially false representations and omissions and false supporting documents.

6.     It was further part of the scheme that STEWART used multiple nominees, including SIMMONS, to purchase properties in transactions where defendants SIMMONS and STEWART prepared and submitted loan applications with material false statements and false supporting

3

documents, and inflated the purchase price in order to obtain fraudulent loans which exceeded the actual purchase price of the property.

7.     It was further part of the scheme that defendant WALKER purchased properties in transactions where defendant SIMMONS acted as the loan officer and prepared and submitted loan applications with material false statements and false supporting documents, where the defendants inflated the purchase price in order to obtain fraudulent loans which exceeded the actual purchase price of the property.

8.     It was further part of the scheme that defendant MCCHRISTION, acting as a nominee, and defendant WADE purchased properties from defendant WALKER, in certain transactions where defendant SIMMONS acted as the loan officer and prepared and submitted loan applications with material false statements and false supporting documents, where the properties had been previously purchased by defendant WALKER at fraudulently inflated prices and financed with fraudulently obtained loans.

9.     It was further part of the scheme that, as a nominee buyer, MCCHRISTION falsely represented in various loan applications that she was employed by Aveak, well knowing that MCCHRISTION had never been employed by Aveak.

10.     It was further part of the scheme that POWELL falsely represented and caused to be falsely represented to lenders that contacted Aveak, for the purpose of verifying MCCHRISTION's employment, that MCCHRISTION was employed by Aveak.

11.     It was further part of the scheme that Individual A purchased properties as a nominee for POWELL in transactions where defendants SIMMONS and POWELL prepared and submitted loan applications with material false statements and false supporting documents, falsely representing

4

that Individual A was employed by Aveak.

12.    It was further part of the scheme that POWELL falsely represented and caused to be falsely represented to lenders that contacted Aveak, for the purpose of verifying Individual A's employment, that Individual A was employed by Aveak.

13.    It was further part of the scheme that POWELL falsely represented and caused to be falsely represented to lenders that other individuals, in addition to MCCHRISTION and Individual A, were employed by Aveak.

14.    It was further part of the scheme that defendant HABEEL acted as a real estate agent for the sellers of certain properties, fraudulently increased the sale price without informing certain sellers, obtained fraudulent loan proceeds in excess of any commission or payment for HABEEL's role as a real estate agent, and concealed the scheme from certain sellers.

15.    It was further part of the scheme that defendant HABEEL created or caused to be created certain documents titled "Power of Attorney for Property," where by the sellers of certain properties authorized defendant HABEEL to act as the sellers' agent in connection with certain real estate transactions, in order to conceal the scheme from certain sellers, namely, that defendant HABEEL had fraudulently increased the sale price.

16.    It was further part of the scheme that defendants SIMMONS, STEWART, WALKER, MCCHRISTION, POWELL, WADE, and HABEEL attended certain closings of properties purchased with fraudulently obtained mortgage loans as part of the scheme and received payments of fraudulently obtained loan proceeds.

17.    It was further part of the scheme that defendant SIMMONS controlled an entity called Poole Investments and Construction ("Poole Investment") and caused this entity to receive in excess

5

of $40,000 of fraudulently obtained loan proceeds from various closings in order to conceal from the lenders that defendant SIMMONS was obtaining fraudulent loan proceeds in excess of any commission or payment received by SIMMONS or Company A as a result of SIMMONS' role as the loan officer.

18.    It was further part of the scheme that defendant STEWART controlled entities called ED Systems Online, Inc. or ED Systems Online.com (collectively "ED Systems") and Unlimited Construction and caused these entities to receive in excess of $100,000 of fraudulently obtained loan proceeds from various closings in order to conceal from the lenders that defendant STEWART was fraudulently obtaining loan proceeds.

19.    It was further part of the scheme that defendant WALKER controlled entities called Real Deal T-Shirts and Real Deal Construction Corporation or RD Construction (collectively "RD Construction") and caused RD Construction to receive in excess of $150,000 of fraudulently obtained loan proceeds from various closings in order to conceal from the lenders that defendant WALKER was fraudulently obtaining loan proceeds.

20.    It was further part of the scheme that defendant MCCHRISTION shared control of a bank account for RD Construction with defendant WALKER.

21.    It was further part of the scheme that defendant WADE controlled entities called Midwest Real Estate or M&W Real Estate (collectively "M&W Real Estate") and caused these entities to receive in excess of $20,000 of fraudulently obtained loan proceeds from various closings in order to conceal from the lenders that defendant WADE was fraudulently obtaining loan proceeds.

22.    It was further part of the scheme that defendant HABEEL controlled entities called Sky Blue Construction Company ("Sky Blue Construction"), Global Investment, Gibraltar Properties

6

and American Funding or American Fund (collectively "American Fund") and caused these entities to receive in excess of $80,000 of fraudulently obtained loan proceeds from various closings in order to conceal from the lenders that defendant HABEEL was fraudulently obtaining loan proceeds.

23.     It was further part of the scheme that defendants SIMMONS, STEWART, WALKER, MCCHRISTION, POWELL, WADE, and HABEEL, and others, did misrepresent, conceal and hide, and cause to be misrepresented, concealed and hidden, acts done in furtherance of the scheme and the purpose of those acts.

### May 19, 2005 Transactions: The Kingston, Eggleston, Maryland and 83rd Street Properties

### The Kingston Property

24.     It was further part of the scheme that, on or about May 19, 2005, defendant SIMMONS knowingly prepared and caused to be prepared and submitted to lenders on behalf of defendant WALKER a loan application package for a $148,500 loan to purchase the property at 9023 South Kingston, Chicago, Illinois ("the Kingston property"), containing a loan application with material false statements about WALKER's financial condition, employment, assets, and rental income, and false supporting documents, namely, false W-2 tax forms, false pay stubs and false leases in support of false rental income for the Kingston property, the property at 7140 South Woodlawn, Chicago, Illinois (" the Woodlawn property"), and the property at 7726 South Maryland, Chicago, Illinois ("the Maryland property").

25.     It was further part of the scheme that defendant HABEEL acted as the real estate agent for Seller A and obtained a Power of Attorney from Seller A in order to inflate the sale price and conceal the scheme from Seller A.

26.     It was further part of the scheme that defendants SIMMONS, WALKER, and
HABEEL fraudulently obtained loan proceeds from this transaction by knowingly causing checks
representing the loan proceeds to be made payable to Poole Investments, RD Construction and
American Fund, and negotiating these checks, well knowing that these loan proceeds were
fraudulently obtained.

### The Eggleston Property

27.     It was further part of the scheme that, on or about May 19, 2005, defendant
SIMMONS prepared and caused to be prepared and submitted to lenders on behalf of defendant
WALKER a loan application package for a $148,500 loan to purchase 11922 South Eggleston,
Chicago, Illinois ("the Eggleston property"), containing a loan application with material false
statements about WALKER's financial condition, employment, assets, and rental income, and
false supporting documents, namely, false W-2 tax forms, false pay stubs and false leases in
support of false rental income for the Kingston property, the Woodlawn property, and the
Maryland property.

28.     It was further part of the scheme that defendant HABEEL acted as the real estate
agent for Seller B and obtained a Power of Attorney from Seller B.

29.     It was further part of the scheme that defendants SIMMONS, WALKER, and
HABEEL fraudulently obtained loan proceeds from this transaction by knowingly causing checks
representing the loan proceeds to be made payable to Poole Investments, RD Construction and
Gibraltar Properties, and negotiating these checks, well knowing that these loan proceeds were
fraudulently obtained.

8

**The Maryland Property**

30.     It was further part of the scheme that, on or about May 19, 2005, defendant

SIMMONS prepared and caused to be prepared and submitted to lenders on behalf of defendant

WALKER a loan application package for a $139,500 loan to purchase the Maryland property,

containing a loan application with material false statements about WALKER's financial

condition, employment, assets, and rental income, and false supporting documents, namely, false

W-2 tax forms, false pay stubs, and false leases in support of false rental income for the Kingston

property, the Woodlawn property, and the Maryland property.

31.     It was further part of the scheme that defendant HABEEL acted as the real estate

agent for Seller C and obtained a Power of Attorney from Seller C in order to inflate the sale

price and conceal the scheme from Seller C.

32.     It was further part of the scheme that defendants SIMMONS and WALKER

fraudulently obtained loan proceeds from this transaction by knowingly causing checks

representing the loan proceeds to be made payable to Poole Investments and RD Construction,

and negotiating these checks, well knowing that these loan proceeds were fraudulently obtained.

**The 83rd Street Property**

33.     It was further part of the scheme that, on or about May 19, 2005, defendant

SIMMONS prepared and caused to be prepared and submitted to lenders on behalf of defendant

WALKER a loan application package for a $156,000 loan to refinance the property at 2344 East

83rd Street, Chicago, Illinois ("the 83rd Street property"), containing a loan application with

material false statements about WALKER's financial condition, employment, assets, and rental

income, and false supporting documents, namely, false W-2 tax forms, false pay stubs and false

9

leases in support of false rental income for the Kingston property, the Woodlawn property, and the Maryland property.

34.    It was further part of the scheme that defendants SIMMONS and WALKER fraudulently obtained loan proceeds from this transaction by knowingly causing checks representing the loan proceeds to be made payable to Poole Investments and defendant WALKER, and negotiating these checks, well knowing that these loan proceeds were fraudulently obtained.

### June 2, 2005 Transaction: The Woodlawn Property

35.    It was further part of the scheme that, on or about June 2, 2005, defendant SIMMONS prepared and caused to be prepared and submitted to lenders on behalf of defendant WALKER a loan application package for a $126,000 loan to purchase the Woodlawn property, containing a loan application with material false statements about WALKER's financial condition, employment, assets, and rental income, and false supporting documents, namely, false W-2 tax forms, false pay stubs and false leases in support of false rental income for the Kingston property, the Woodlawn property, and the Maryland property, and false invoices which falsely represented that Poole Investments, RD Construction, and Sky Blue Construction had rendered services to Seller D in connection with the Woodlawn property.

36.    It was further part of the scheme that defendant HABEEL acted as the real estate agent for Seller D and obtained a Power of Attorney from Seller D in order to represent Seller D at the closing and conceal the scheme from Seller D.

37.    It was further part of the scheme that defendants SIMMONS, WALKER, and HABEEL fraudulently obtained loan proceeds from this transaction by knowingly causing checks representing the loan proceeds to be made payable to Poole Investments, RD Construction and

10

Skyblue Construction, and negotiating these checks, well knowing that these loan proceeds were fraudulently obtained, that no construction, repairs, or services had been provided to Seller D in connection with the Woodlawn property by Poole Investments, RD Construction or Skyblue Construction, and that the invoices purporting to be on behalf of Poole Investments, RD Construction and Skyblue Construction were false.

### October 6, 2005 Transaction: 5341 S. Hermitage

38.    It was further part of the scheme that, on or about October 6, 2005, defendant SIMMONS prepared and caused to be prepared and submitted to lenders on behalf of defendant WALKER a loan application package for a $202,500 loan to purchase 5341 South Hermitage, Chicago, Illinois ("5341 S. Hermitage"), containing a loan application with material false statements about WALKER's financial condition, employment, assets, and rental income, the purchase price, and falsely stating that defendant WALKER had made an earnest money payment of $22,000 to Seller E, and false supporting documents, namely, false W-2 tax forms, false pay stubs, false leases in support of rental income for 5341 S. Hermitage, and false invoices which falsely represented that Poole Investments and RD Construction had rendered construction and repair services to Seller E in connection with 5341 S. Hermitage.

39.    It was further part of the scheme that at the closing, it was represented that Global Investments, the entity controlled by HABEEL, was in possession of a $22,500 check representing earnest money or deposit toward the purchase price of 5341 S. Hermitage by defendant WALKER for Seller E, when in fact no such earnest money payment was made to Seller E.

40.    It was further part of the scheme that defendants SIMMONS and WALKER fraudulently obtained loan proceeds from this transaction by knowingly causing checks

11

representing the loan proceeds to be made payable to Poole Investments and RD Construction, and negotiating these checks, well knowing that these loan proceeds were fraudulently obtained, that no construction, repairs, or services had been provided to Seller E in connection with 5341 S. Hermitage by Poole Investments or RD Construction, and that the invoices purporting to be on behalf of Poole Investments and RD Construction were false.

**January 20, 2006: The Evans Property**

41.     It was further part of the scheme that, on or about January 20, 2006, defendant SIMMONS, acting as a nominee buyer for defendant STEWART, caused to be prepared and submitted to lenders a loan application package for a $221,000 loan to purchase 6445 S. Evans, Chicago, Illinois ("the Evans property") containing, a loan application with material false statements about SIMMONS' rental income, and falsely stating that defendant SIMMONS had made an earnest money payment of $26,000 to Seller F, and false supporting documents, namely, false leases in support of rental income for the Evans property and a false sales contract.

42.     It was further part of the scheme that defendant STEWART fraudulently obtained loan proceeds from this transaction in the amount of $60,138.05, by knowingly causing a check representing the loan proceeds to be made payable to ED Systems, the entity controlled by defendant STEWART, and negotiating this check, well knowing that these loan proceeds were fraudulently obtained.

12

### January 31, 2006 Transactions: The Park
### Forrest and Kingston Properties

### The Park Forrest Property

43.     It was further part of the scheme that, on or about January 31, 2006, defendant

SIMMONS prepared and caused to prepared and submitted on behalf of defendant

MCCHRISTION a loan application package for a $123,300 loan to purchase 277 Allegheny

Street, Park Forrest, Illinois ("the Park Forrest property"), containing a loan application with

material false statements about MCCHRISTION's financial condition, employment, and falsely

stating that defendant MCCHRISTION had made an earnest money payment of $13,700 to Seller

G, and that the purchase price was $137,000 when, in fact, it was approximately $86,000, and

false supporting documents, namely, false W-2 tax forms, false pay stubs and false invoices,

which falsely represented that Poole Investments and RD Construction, had rendered services to

Seller G in connection with the Park Forrest property.

44.     It was further part of the scheme that, on or about January 30, 2006, defendant

POWELL falsely represented to the lender that defendant MCCHRISTION was employed by

Aveak since 2002 and earned a base salary of $1,604.20 on a bi-weekly basis.

45.     It was further part of the scheme that defendants SIMMONS, WALKER and

MCCHRISTION fraudulently obtained loan proceeds from this transaction by knowingly causing

checks representing the loan proceeds to be made payable to Poole Investments and RD

Construction, and negotiating these checks, well knowing that these loan proceeds were

fraudulently obtained, that no construction, repairs, or services had been provided to Seller G in

connection with Park Forest property by Poole Investments or RD Construction, and that the

invoices purporting to be on behalf of Poole Investments and RD Construction were false.

### The Kingston Property

46.     It was further part of the scheme that, on or about January 31, 2006, defendant SIMMONS prepared and caused to be prepared and submitted to lenders on behalf of defendant MCCHRISTION a loan application package for a $204,250 loan to purchase the Kingston property from defendant WALKER, containing a loan application with material false statements about MCCHRISTION's financial condition and employment, and false supporting documents, namely, false W-2 tax forms and false pay stubs.

47.     It was further part of the scheme that, on or about January 30, 2006, defendant POWELL falsely represented to the lender that defendant MCCHRISTION was employed by Aveak since 2002 and earned a base salary of $1,604.20 on a bi-weekly basis.

48.     It was further part of the scheme that defendants SIMMONS fraudulently obtained loan proceeds from this transaction by knowingly causing checks representing the loan proceeds to be made payable to Poole Investments and negotiating these checks, well knowing that these loan proceeds were fraudulently obtained.

### February 23, 2006 Transaction: 6812 S. Hermitage

49.     It was further part of the scheme that, on or about February 23, 2006, defendant SIMMONS prepared and submitted to lenders on behalf of defendant WADE a loan application package for a $171,000 loan to purchase 6812 South Hermitage, Chicago, Illinois ("6812 S. Hermitage"), containing a loan application with material false statements about WADE's financial condition, assets, and falsely stating that defendant WADE has made an earnest money payment.

50.     It was further part of the scheme that defendants SIMMONS, WADE, and HABEEL fraudulently obtained loan proceeds from this transaction by knowingly causing checks

representing the loan proceeds to be made payable to Poole Investments, M&W Real Estate, American Fund and Gibraltar Properties, and negotiating these checks, well knowing that these loan proceeds were fraudulently obtained.

### March 17, 2006 Transactions: The Eggleston, Maryland, and 83rd Street Properties

### The Eggleston Property

51.     It was further part of the scheme that, on or about March 17, 2006, defendant SIMMONS prepared and caused to be prepared and submitted to lenders on behalf of defendant WADE a loan application package for a $157,500 loan to purchase the Eggleston property from defendant WALKER, containing a loan application with material false statements about WADE's financial condition, assets and falsely stating that defendant WADE had made an earnest money payment.

### The Maryland Property

52.     It was further part of the scheme that, on or about March 17, 2006, defendant SIMMONS prepared and caused to be prepared and submitted to lenders on behalf of defendant WADE a loan application package for a $157,500 loan to purchase the Maryland property from defendant WALKER, containing a loan application with material false statements about WADE's financial condition, assets, and falsely stating that defendant WADE had made an earnest money payment.

53.     It was further part of the scheme that defendant WADE fraudulently obtained loan proceeds from this transaction by knowingly causing the title company to make a check representing the loan proceeds to be made payable to M&W Real Estate Investment and negotiating this check,  well knowing that these loan proceeds were fraudulently obtained.

15

**The 83rd Street Property**

54.     It was further part of the scheme that, on or about March 17, 2006, defendant SIMMONS prepared and caused to be prepared and submitted to lenders on behalf of defendant WADE loan application packages for a $140,000 loan and a $35,000 loan to purchase the 83rd Street property from defendant WALKER, containing a loan application with material false statements about WADE's financial condition and assets.

55.     It was further part of the scheme that defendant WADE fraudulently obtained loan proceeds from this transaction by knowingly causing the title company to make a check representing the loan proceeds to be made payable to M&W Real Estate Investment and negotiating this check, well knowing that these loan proceeds were fraudulently obtained.

**March 22, 2006 Transaction: The South Holland Property**

56.     It was further part of the scheme that, on or about March 22, 2006, defendant SIMMONS prepared and caused to be prepared and submitted to lenders on behalf of defendant MCCHRISTION loan application packages for a $244,000 loan and a $61,000 loan to purchase 1107 East 173rd Place, South Holland, Illinois ("the South Holland property"), containing a loan application with material false statements about MCCHRISTION's financial condition, employment, and false supporting documents, namely, false W-2 tax forms and false pay stubs.

57.     It was further part of the scheme that defendants WALKER and MCCHRISTION moved into the South Holland property.

**June 12, 2006 Transaction:**
**The St. Lawrence Property**

58.     It was further part of the scheme that, on or about June 12, 2006, defendant SIMMONS prepared and submitted to lenders on behalf of defendant MCCHRISTION, as a

16

nominee for defendant STEWART, a loan application package for a $397,800 loan to purchase the property at 4322 South Saint Lawrence, Chicago, Illinois ("the St. Lawrence property"), containing a loan application with material false statements about MCCHRISTION's financial condition, rental income, and falsely stating that defendant MCCHRISTION had made an earnest money payment of $22,100 to Seller H, and false supporting documents, namely, bank statements and an invoice which falsely represented that ED Systems had rendered services to Seller H in connection with the St. Lawrence property.

59.     It was further part of the scheme that, on or about June 12, 2006, defendant POWELL falsely represented to the lender that defendant MCCHRISTION was employed by Aveak as an assistant property manager.

60.     It was further part of the scheme that defendant STEWART fraudulently obtained loan proceeds from this transaction by knowingly causing a check representing the loan proceeds to be made payable to ED Systems, and negotiated this check, well knowing that these loan proceeds were fraudulently obtained, that no construction, repairs, or services had been provided to Seller H in connection with the St. Lawrence property by ED Systems, and that the invoice purporting to be on behalf of ED Systems was false.

### June 2006: The Prarie Property and The Yates Property

61.     It was further part of the scheme that, on or about June 13, 2006, defendant SIMMONS prepared and submitted to lenders on behalf of Individual A, as a nominee for defendant POWELL, a loan application package for a $230,200 loan and a $57,550 loan to purchase the property at 8007 S. Prairie, Chicago, Illinois ("the Prairie property"), containing a loan application with material false statements about Individual A's employment and false supporting documents, namely, false W-2 tax forms and false pay stubs which falsely represented

17

that Individual A was employed by Aveak.

62.    It was further part of the scheme that, on or about June 26, 2006, defendant SIMMONS prepared and submitted to lenders on behalf of Individual A, as a nominee for defendant POWELL, a loan application package for a $260,000 loan and a $65,000 to purchase the property at 318 Yates, Calumet City, Illinois ("the Yates property"), containing a loan application with material false statements about Individual A's employment and false supporting documents, namely, false W-2 tax forms and false pay stubs which falsely represented that Individual A was employed by Aveak.

63.    On or about January 20, 2006, at Chicago, and elsewhere, in the Northern District of Illinois, Eastern Division,

CAROL SIMMONS, and
ELLIE STEWART,

defendants herein, for the purpose of executing and attempting to execute the above-described scheme, did knowingly cause to be transmitted by means of a wire communication in interstate commerce from Seattle, Washington, to Freeport, Illinois, certain signs, signals and sounds, namely, a wire transfer of approximately $219,423.96, which funds were the proceeds of a mortgage loan made by Long Beach Mortgage, for the purchase of the Evans property;

In violation of Title 18, United States Code, Section 1343.

## COUNT TWO

The SPECIAL AUGUST 2009-1 GRAND JURY further charges:

1.     The allegations in paragraph 1 through 63 of Count One of this indictment are hereby realleged and incorporated by reference as if fully stated herein.

2.     On or about January 31, 2006, at Chicago, and elsewhere, in the Northern District of Illinois, Eastern Division,

CAROL SIMMONS,
GREGORY WALKER,
TAYNA MCCHRISTION, and
KAEVA POWELL,

defendants herein, for the purpose of executing and attempting to execute the above-described scheme, did knowingly cause to be transmitted by means of a wire communication in interstate commerce from Seattle, Washington, to Freeport, Illinois, certain signs, signals and sounds, namely, a wire transfer of approximately $203,300.20, which funds were the proceeds of a mortgage loan made by Long Beach Mortgage, for the purchase of the Kingston property;

In violation of Title 18, United States Code, Section 1343.

## COUNT THREE

The SPECIAL AUGUST 2009-1 GRAND JURY further charges:

1.     The allegations in paragraph 1 through 63 of Count One of this indictment are hereby realleged and incorporated by reference as if fully stated herein.

2.     On or about January 31, 2006, at Park Forrest, and elsewhere, in the Northern District of Illinois, Eastern Division,

CAROL SIMMONS,
GREGORY WALKER,
TAYNA MCCHRISTION, and
KAEVA POWELL,

defendants herein, for the purpose of executing and attempting to execute the above-described scheme, did knowingly cause to be transmitted by means of a wire communication in interstate commerce from Seattle, Washington, to Freeport, Illinois, certain signs, signals and sounds, namely, a wire transfer of approximately $121,390.39, which funds were the proceeds of a mortgage loan made by Long Beach Mortgage, for the purchase of the Park Forest property;

In violation of Title 18, United States Code, Section 1343.

## COUNT FOUR

The SPECIAL AUGUST 2009-1 GRAND JURY further charges:

1.      The allegations in paragraph 1 through 63 of Count One of this indictment are hereby realleged and incorporated by reference as if fully stated herein.

2.      On or about February 23, 2006, at Chicago, and elsewhere, in the Northern District of Illinois, Eastern Division,

CAROL SIMMONS,<br>
BRIAN WADE, and<br>
DANIEL HABEEL,

defendants herein, for the purpose of executing and attempting to execute the above-described scheme, did knowingly cause to be transmitted by means of a wire communication in interstate commerce from Seattle, Washington, to Freeport, Illinois, certain signs, signals and sounds, namely, a wire transfer of approximately $156,367.54, which funds were the proceeds of a mortgage loan made by Long Beach Mortgage, for the purchase of 6812 S. Hermitage;

In violation of Title 18, United States Code, Section 1343.

21

## COUNT FIVE

The SPECIAL AUGUST 2009-1 GRAND JURY further charges:

1.     The allegations in paragraph 1 through 63 of Count One of this indictment are hereby realleged and incorporated by reference as if fully stated herein.

2.     On or about March 17, 2006, at Chicago, and elsewhere, in the Northern District of Illinois, Eastern Division,

CAROL SIMMONS,
GREGORY WALKER, and
BRIAN WADE,

defendants herein, for the purpose of executing and attempting to execute the above-described scheme, did knowingly cause to be transmitted by means of a wire communication in interstate commerce from Anaheim, California, to Freeport, Illinois, certain signs, signals and sounds, namely, a wire transfer of approximately $34,534.90, which funds were the proceeds of a mortgage loan made by Long Beach Mortgage, for the purchase of the 83rd Street property;

In violation of Title 18, United States Code, Section 1343.

## COUNT SIX

The SPECIAL AUGUST 2009-1 GRAND JURY further charges:

1.     The allegations in paragraph 1 through 63 of Count One of this indictment are hereby realleged and incorporated by reference as if fully stated herein.

2.     On or about March 17, 2006, at Chicago, and elsewhere, in the Northern District of Illinois, Eastern Division,

CAROL SIMMONS,
GREGORY WALKER, and
BRIAN WADE,

defendants herein, for the purpose of executing and attempting to execute the above-described scheme, did knowingly cause to be transmitted by means of a wire communication in interstate commerce from Anaheim, California, to Freeport, Illinois, certain signs, signals and sounds, namely, a wire transfer of approximately $138,687, which funds were the proceeds of a mortgage loan made by Long Beach Mortgage, for the purchase of the 83rd Street property;

In violation of Title 18, United States Code, Section 1343.

## COUNT SEVEN

The SPECIAL AUGUST 2009-1 GRAND JURY further charges:

1.     The allegations in paragraph 1 through 63 of Count One of this indictment are hereby realleged and incorporated by reference as if fully stated herein.

2.     On or about March 22, 2006, at South Holland, and elsewhere, in the Northern District of Illinois, Eastern Division,

CAROL SIMMONS,
GREGORY WALKER, and
TAYNA MCCHRISTION,

defendants herein, for the purpose of executing and attempting to execute the above-described scheme, did knowingly cause to be transmitted by means of a wire communication in interstate commerce from Calabasas, California, to Chicago, Illinois, certain signs, signals and sounds, namely, a wire transfer of approximately $242,694.70, which funds were the proceeds of a mortgage loan made by Countrywide, for the purchase of the South Holland property;

In violation of Title 18, United States Code, Section 1343.

## **COUNT EIGHT**

The SPECIAL AUGUST 2009-1 GRAND JURY further charges:

1.     The allegations in paragraph 1 through 63 of Count One of this indictment are hereby realleged and incorporated by reference as if fully stated herein.

2.     On or about March 22, 2006, at South Holland, and elsewhere, in the Northern District of Illinois, Eastern Division,

CAROL SIMMONS,
GREGORY WALKER, and
TAYNA MCCHRISTION,

defendants herein, for the purpose of executing and attempting to execute the above-described scheme, did knowingly cause to be transmitted by means of a wire communication in interstate commerce from Calabasas, California, to Chicago, Illinois, certain signs, signals and sounds, namely, a wire transfer of approximately $60,798.60, which funds were the proceeds of a mortgage loan made by Countrywide, for the purchase of the South Holland property;

In violation of Title 18, United States Code, Section 1343.

## COUNT NINE

The SPECIAL AUGUST 2009-1 GRAND JURY further charges:

1.     The allegations in paragraph 1 through 63 of Count One of this indictment are hereby realleged and incorporated by reference as if fully stated herein.

2.     On or about June 12, 2006, at Chicago, and elsewhere, in the Northern District of Illinois, Eastern Division,

CAROL SIMMONS,
ELLIE STEWART,
TAYNA MCCHRISTION, and
KAEVA POWELL,

defendants herein, for the purpose of executing and attempting to execute the above-described scheme, did knowingly cause to be transmitted by means of a wire communication in interstate commerce from Princeton, New Jersey, to Freeport, Illinois, certain signs, signals and sounds, namely, a wire transfer of approximately $391,287.89, which funds were the proceeds of a mortgage loan made by Fieldstone Mortgage, for the purchase of the St. Lawrence property;

In violation of Title 18, United States Code, Section 1343.

26

**COUNT TEN**

The SPECIAL AUGUST 2009-1 GRAND JURY further charges:

1.     The allegations in paragraph 1 through 63 of Count One of this indictment are hereby realleged and incorporated by reference as if fully stated herein.

2.     On or about June 13, 2006, at Chicago, and elsewhere, in the Northern District of Illinois, Eastern Division,

CAROL SIMMONS, and
KAEVA POWELL

defendants herein, for the purpose of executing and attempting to execute the above-described scheme, did knowingly cause to be transmitted by means of a wire communication in interstate commerce from Jacksonville, Florida, to Columbus, Ohio, certain signs, signals and sounds, namely, a wire transfer of approximately $226,226.42, which funds were the proceeds of a mortgage loan made by Long Beach Mortgage, for the purchase of the Prairie property;

In violation of Title 18, United States Code, Section 1343.

## **COUNT ELEVEN**

The SPECIAL AUGUST 2009-1 GRAND JURY further charges:

1.     The allegations in paragraph 1 through 63 of Count One of this indictment are hereby realleged and incorporated by reference as if fully stated herein.

2.     On or about June 13, 2006, at Chicago, and elsewhere, in the Northern District of Illinois, Eastern Division,

CAROL SIMMONS, and
KAEVA POWELL

defendants herein, for the purpose of executing and attempting to execute the above-described scheme, did knowingly cause to be transmitted by means of a wire communication in interstate commerce from Anaheim, California, to Oak Lawn, Illinois, certain signs, signals and sounds, namely, a wire transfer of approximately $56,933.44, which funds were the proceeds of a mortgage loan made by Long Beach Mortgage, for the purchase of the Prairie property;

In violation of Title 18, United States Code, Section 1343.

## **COUNT TWELVE**

The SPECIAL AUGUST 2009-1 GRAND JURY further charges:

1.      The allegations in paragraph 1 through 63 of Count One of this indictment are hereby realleged and incorporated by reference as if fully stated herein.

2.      On or about June 26, 2006, at Chicago, and elsewhere, in the Northern District of Illinois, Eastern Division,

CAROL SIMMONS, and<br>
KAEVA POWELL

defendants herein, for the purpose of executing and attempting to execute the above-described scheme, did knowingly cause to be transmitted by means of a wire communication in interstate commerce from New York, New York, to Chicago, Illinois, certain signs, signals and sounds, namely, a wire transfer of approximately $225,603.35, which funds were the proceeds of a mortgage loan made by Accredited Home Lenders, for the purchase of the Yates property;

In violation of Title 18, United States Code, Section 1343.

## COUNT THIRTEEN

The SPECIAL AUGUST 2009-1 GRAND JURY further charges:

1.      The allegations in paragraph 1 through 63 of Count One of this indictment are hereby realleged and incorporated by reference as if fully stated herein.

2.      On or about June 26, 2006, at Chicago, and elsewhere, in the Northern District of Illinois, Eastern Division,

CAROL SIMMONS, and<br>
KAEVA POWELL

defendants herein, for the purpose of executing and attempting to execute the above-described scheme, did knowingly cause to be transmitted by means of a wire communication in interstate commerce from New York, New York, to Chicago, Illinois, certain signs, signals and sounds, namely, a wire transfer of approximately $64,432.85, which funds were the proceeds of a mortgage loan made by Accredited Home Lenders, for the purchase of the Yates property;

In violation of Title 18, United States Code, Section 1343.

## FORFEITURE ALLEGATION

The SPECIAL AUGUST 2009-1 GRAND JURY further charges:

1.      The allegations of Counts 1 through 13 of this Indictment are realleged and
incorporated by reference as if fully restated herein for the purpose of alleging that certain
property is subject to forfeiture to the United States, pursuant to Title 18, United States Code,
Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

2.      As a result of their violations of Title 18, United States Code, Section 1343, as
alleged in the foregoing Indictment,

> CAROL SIMMONS,
> ELLIE STEWART,
> GREGORY WALKER,
> TAYNA MCCHRISTION,
> KAEVA POWELL,
> BRIAN WADE, and
> DANIEL HABEEL,

defendants herein, shall forfeit to the United States, pursuant to Title 18, United States Code,
Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any and all right, title,
and interest they may have in any property, real and personal, involved in the wire fraud offenses,
and traceable to the property involved in the offenses, which property is subject to forfeiture
pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code,
Section 2461(c).

3.      The interests of the defendants subject to forfeiture to the United States pursuant
to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code,
Section 2461(c), include the sum of approximately $3,000,000.

4.      By virtue of the commission of the offenses charged in Counts 1 through 13 of

31

this Indictment by the defendants, all right, title or interest that defendants have in the above-described property is vested in the United States and hereby forfeit pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

     5.     If any of the property described above as being subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendants:

     a.     cannot be located upon the exercise of due diligence;

     b.     has been transferred to, sold to, or deposited with a third person;

     c.     has been placed beyond the jurisdiction of the Court;

     d.     has been substantially diminished in value;

     e.     has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States to seek forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p) as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

     All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

A TRUE BILL:

_____

FOREPERSON

_____

UNITED STATES ATTORNEY

32